IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LILLIAN G. ARAGON,

        **Plaintiff,**

vs.                                                        No.  02cv0932 DJS

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

        **Defendant.**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's (Aragon's) Motion to Reverse or Remand Administrative Agency Decision **[Doc. No. 15]**, filed July 3, 2003, and fully briefed on September 19, 2003.  On January 22, 2002, the Commissioner of Social Security issued a final decision denying Aragon's claim for disability insurance benefits.  Having considered the arguments, pleadings, administrative record, relevant law, and being otherwise fully informed, the Court finds the motion to remand is well taken and will be GRANTED.

### I.  Factual and Procedural Background

Aragon, now forty-five years old, filed her application for disability insurance benefits on May31, 2000 (Tr. 54), alleging disability since October 4, 1998, due to a right knee injury.  Tr. 14.  Aragon has a high school education and past relevant work as a cafeteria helper and cashier. *Id.*  On January 22, 2002, the ALJ denied benefits, finding Aragon had "degenerative arthritis of the right knee, stable osteochondritis of the right knee and history of knee surgeries" which were medically determinable impairments that were "severe within the meaning of the Regulations but

not severe enough to meet or medically equal one of the impairments listed in Appendix I, Subpart P, Regulations No. 4." Tr. 15.  The ALJ further found Aragon retained the residual functional capacity (RFC) for "a range of sedentary work and limited range of light work." Tr. 16.  The ALJ also found Aragon's subjective complaints not credible and inconsistent with the objective medical evidence. Tr. 16.  Aragon filed a Request for Review of the decision by the Appeals Council.  On May 1, 2002, the Appeals Council denied Aragon's request for review of the ALJ's decision.  Hence, the decision of the ALJ became the final decision of the Commissioner for judicial review purposes.  Aragon seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

## II.  Standard of Review

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992).  Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).  "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  Moreover, "all of the ALJ's required findings must be supported by substantial evidence," *Haddock v. Apfel,* 196 F.3d 1084, 1088 (10th Cir. 1999), and all of the relevant medical evidence of record must be considered in making those findings, *see Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989).  "[I]n addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative

evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996).  Therefore, while the Court does not reweigh the evidence or try the issues de novo, *see Sisco v. United States Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993), the Court must meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings, in order to determine if the substantiality test has been met.  *See Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).

### III.  Discussion

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity.  *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. §423(d)(1)(A)).  The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. 20 C.F.R. § 404.1520 (a-f).  The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled.  *Thompson*, 987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show she is not engaged in substantial gainful employment, she has an impairment or combination of impairments severe enough to limit her ability to do basic work activities, and her impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or she is unable to perform work she had done in the past. 20 C.F.R. §§ 404.1520 and 416.920.  At the fifth step of the evaluation, the burden of proof shifts to

the Commissioner to show the claimant is able to perform other substantial gainful activity considering her residual functional capacity, age, education, and prior work experience. *Id.*

In support of her motion to reverse, Aragon makes the following arguments: (1) the ALJ's RFC assessment if not supported by substantial evidence and is contrary to law; and (2) the ALJ's finding that she could perform other work is not supported by substantial evidence and is contrary to law.

## A.  Residual Functional Capacity Determination

Aragon contends the ALJ's findings that she is capable of lifting/carrying five to ten pounds, able to stand/walk at least two hours, able to sit about six hours in an eight-hour workday and is unlimited in pushing/pulling are not supported by substantial evidence and are contrary to law for the following reasons: (1) the ALJ's finding that she can perform the full range of sedentary work and a limited range of light work is contradicted by the ALJ's finding that she can lift and carry only five to ten pounds; (2) substantial evidence does not support the finding of stable osteochondritis; (3) the ALJ erred by not considering the pain-producing impairments resulting from her knee surgeries; (4) the ALJ erred by not considering her immediate need for a third knee surgery in her RFC analysis; (5) the ALJ erred in adopting her own inexpert opinion as her RFC finding; (6) the medical reviewer's report does not constitute substantial evidence supporting the RFC finding; (7) the ALJ erred by failing to obtain an RFC assessment from a treating or examining physician; and (8) the ALJ's credibility assessment is not supported by substantial evidence and is contrary to law.

**1.  RFC Finding for Full Range of Sedentary Work and a Limited Range of Light Work**

Residual functional capacity (RFC) is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirement of jobs."  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(c).  In arriving at an RFC, agency rulings require an ALJ to provide a "narrative discussion describing how the evidence supports" his or her conclusion.  See SSR 96-8p, 1996 WL 374184, at *7.  The ALJ must "discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis . . . and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record."  *Id.*  The ALJ must also explain how "any material inconsistencies or ambiguities in the case record were considered and resolved."  *Id.*  "The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence."  *Id.*

The regulations define sedentary work as follows:

> Sedentary work involves <u>lifting no more than 10 pounds at a time</u> and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary is walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §404.1567(a)(emphasis added). Occasionally means occurring from very little up to one-third of the time.  SSR 83-10, 1983 WL 31251, *4 (1983).

In her decision, the ALJ found:

> The objective medical evidence reveals that after the work-related accident Mr.(sic) Aragon underwent knee surgery and prescribed physical therapy (Exhibit 3F).  In July 1999 she received treatment at Lovelace Clinic due to complaints of right knee pain.  X-rays of the knee showed no fracture or mal-alignment, but did reveal some mild

5

>degenerative changes (Exhibit 4F). By September 1999, significant improvement was reported increased mobility was recommended. By October 1999, pain was reported to be "not as bad as before." At this time she was discharged to a home exercise program. Two years later he underwent right knee surgery (March 29, 2000) and remained non-weight bearing until April 18, 2001 when partial weight bearing began (Exhibit 8F). The most recent medical statement dated October 3, 2001 reports arthroscopic surgery is scheduled for October 13, 2001, however to date that procedure ha not been performed (Exhibit 11F). Thus, in considering Ms. Aragon's testimony in conjunction with the evidence of record it is evident that while she exhibits some functional limitations, the record does not support she is precluded from all work in the economy.
>
>The DDS medical consultant's residual functional assessment for a sedentary range of work, which is consistent with my findings that Ms. Aragon is capable of lifting /carrying five to ten pounds, to stand/walk at least 2 hours, sit about six hours in an eight-hour work-day and is unlimited in pushing/pulling (Exhibit 5F).
>
>I find essentially that the record demonstrates Ms. Aragon has experienced pain and functional limitations initially following surgery but, the evidence does not support that she continues to experience significant limitations since the alleged onset to preclude work sedentary activity in the national economy. Moreover, I do not find her subjective complaints credible, as they are inconsistent with the objective evidence of record.
>
>Accordingly, I determine that Ms. Aragon retains the following residual functional capacity for a range of sedentary work and limited range of light work.

Tr. 15-16. According to Aragon, the ALJ's finding that she can perform the full range of sedentary work and a limited range of light work is contradicted by her finding that Aragon can lift and carry only five to ten pounds. Aragon argues that because the ALJ found she could not reliably lift and carry ten pounds, "it follows that she cannot perform the full range of sedentary work." Pl.'s Mem. in Supp. of Mot. to Reverse at 15. The Court disagrees. The ALJ found Aragon was capable of lifting/carrying 5 to 10 pounds which is consistent with the ability to perform the full range of work. Moreover, Aragon testified Dr. Harvie, an osteopathic orthopedist and her treating physician, instructed her "not to lift anymore than 15 pounds at one time . . . ." Tr. 34.

6

**2. ALJ's Finding of "Stable Osteochondritis"**

Aragon takes issue with the ALJ's finding that her osteochondritis was stable. Aragon argues the ALJ's assessment of her RFC was legally erroneous because it was based on an incorrect evaluation of her right knee impairment. According to Aragon, the record shows her osteochondritis "was not stable but had advanced during the period under consideration." *Id.* Aragon further argues that the March 2000 MRI "demonstrated 'significant progression' of disease in the patella since the prior study." However, the March 8, 2000 MRI indicates the following:

> FINDINGS: There is irregularity and narrowing of the patellar cartilage, especially along the medial facet, with subchondral edema near the medial facet. These changes have significantly progressed since the prior study.
>
> Again identified is an <u>osteochondral lesion within the medial femoral condyle</u>, measuring 5mm, with slight articular cartilage irregularity and subchondral edema and sclerosis. <u>This is not significantly changed</u>. The cruciate and collateral ligaments are intact. The menisci appear normal. There is a small joint effusion.
>
> CONCLUSION:
> 1. Chondromalacia patellae
> 2. **Stable** <u>osteochondral defect, medial femoral condyle</u>
> 3. Joint effusion.

Tr. 239 (emphasis added), *See also,* Tr. 232, 233. Chondromalacia patellae is the softening of the articular cartilage of the patella. *Stedman's Medical Dictionary* 332 (26th ed. 1995). The MRI report indicates that the irregularity and narrowing of the patellar cartilage had significantly progressed since the prior study, but the osteochondritis was stable. Accordingly, the evidence supports the ALJ's finding that Aragon's osteochondritis was stable.

**3. Consideration of Aragon's Pain-Producing Impairments Resulting from the Surgeries**

Aragon next contends the ALJ erred by not considering the pain-producing impairments resulting from her knee surgeries. Pl.'s Mem. in Supp. of Mot. to Reverse at 16. Aragon contends that "although the ALJ referred to the surgeries in her decision, she did not factor the functional effects of the procedures into her RFC analysis." *Id.* Aragon contends "[t]he ALJ failed to recognize that the surgeries did not repair the knee, but merely removed eroded tissue, resulting in additional pain-producing impairments." *Id.* The record does not support Aragon's argument. The ALJ's decision indicates she considered the surgeries and noted, "Following surgery she underwent physical therapy, which she testified, worsened her condition. However, perusal of the medical records show <u>evidence of pain reduction and medical improvement</u>." Tr. 15 (emphasis added). The ALJ also noted Aragon had undergone a second surgery in 2001 and considered it in concluding that the record did not support Aragon's claim that she was precluded from working. Tr. 16.

**4. Aragon's Immediate Need for a Third Knee Surgery**

Aragon contends "the ALJ erred by failing to consider that Plaintiff's right knee requires additional surgery in her RFC assessment." Pl.'s Mem. in Supp. of Mot. to Reverse at 17. The record also does not support Aragon's contention. The ALJ's decision indicates the ALJ considered Aragon's need for additional surgery along with other evidence. Tr. 15-17.

**5. ALJ's RFC Determination**

According to Aragon, "the ALJ erred in adopting her own inexpert opinion as her RFC finding." *Id.* at 17. Aragon argues that "the ALJ admitted that her own opinion, not medical opinion, was the basis for the RFC finding." *Id.* However, under the regulations, "RFC is

8

assessed <u>by adjudicators at each level of the administrative review process</u> based on all of the relevant evidence in the case record, including information about the individual's symptoms and any 'medical source statements' – i.e., opinions about what the individual can still do despite his or her impairment(s) – submitted by an individual's treating source or other acceptable medical sources." SSR 96-8p, 1996 WL 374184, *2 (1996)(emphasis added). Additionally, Social Security Ruling 96-5p directs as follows:

> Under 20 C.F.R. § 404.1527(e) and 416.927(e), some issues <u>are not medical issues</u> regarding the nature and severity of an individual's impairment(s) <u>but are administrative findings</u> that are dispositive of a case; i.e., that would direct the determination or decision of disability. The following are examples of such issues:
>
> 1. Whether an individual' impairment(s) meets or is equivalent in severity to the requirements of any impairment(s) in the listings;
> 2. <u>What an individual's RFC is;</u>
> 3. Whether an individual's RFC prevents him or her from doing past relevant work;
> 4. How the vocational factors of age, education, and work experience apply; and
> 5. Whether an individual is 'disabled' under the Act.
>
> The regulations provide that the final responsibility for deciding issues such as these is reserved to the Commissioner.

SSR 96-5p, 1996 WL 374183, *2 (1996)(emphasis added). Accordingly, the Court finds Aragon's argument that the ALJ erred in "adopting her own inexpert opinion as her RFC finding is without merit. However, because the Court finds that the ALJ erred in her credibility determination and in applying the Medical-Vocational Guidelines (the grids) conclusively, on remand, the ALJ should redetermine Aragon's RFC.

## B. Credibility Determination

Credibility determinations are peculiarly the province of the finder of fact and will not be upset when supported by substantial evidence. *Diaz v. Secretary of Health and Human Servs.*,

898 F.2d 774, 777 (10th Cir. 1990). "Findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Huston v. Bowen,* 838 F.2d 1125, 1133 (10th Cir. 1988). However, the ALJ's credibility determination does not require a formalistic factor-by-factor recitation of the evidence. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). The ALJ need only set forth the specific evidence he relies on in evaluating claimant's credibility. *Id.* The ALJ may also consider his personal observations of the claimant in his overall evaluation of the claimant's credibility. *Id.*

In evaluating a claimant's credibility regarding pain, the ALJ must consider the level of medication the claimant uses and its effectiveness, the claimant's attempts to obtain relief, the frequency of medical contacts, the claimant's daily activities, subjective measures of the claimant's credibility, and the consistency or compatibility of nonmedical testimony with objective medical evidence. *Kepler v. Chater*, 68 F.3d 387, 391 (quotation omitted). The inability to work pain-free is not sufficient reason to find a claimant disabled. *See Gossett v. Bowen*, 862 F.2d 802, 807 (10th Cir. 1988).

In her decision, the ALJ found:

> I find essentially that the record demonstrates Ms. Aragon has experienced pain and functional limitations initially following surgery, but the evidence does not support that she continues to experience significant limitations since the alleged onset to preclude work sedentary activity in the national economy. Moreover, I do not find her subjective complaints credible, as they are inconsistent with the objective evidence of record.

Tr. 16. This finding is not supported by substantial evidence. The record indicates that, in an attempt to relieve her pain, Aragon had two surgeries and underwent a series of five Hyalgan[1]

---

[1] Hyalgan is indicated for the treatment of pain in osteoarthritis of the knee in patients who have failed to respond adequately to conservative nonpharmacolgical therapy and to simple analgesics. *Physicians' Desk Reference* 2785 (53d ed. 1999)

injections to the right knee (Tr. 225-229).  Moreover, on September 25, 2001, Dr. Tabet, Aragon's orthopedist, opined she was a candidate for "Carticel implant or autologous cartilage infusion" and advised Aragon he would have to re-arthroscope her right knee to examine and biopsy the lesion  Tr. 255.  Dr. Harvie also opined Aragon that in the future she would need a total knee replacement.  Tr. 225.  The ALJ failed to link her credibility determination to substantial evidence.  Therefore, the Court will remand to allow the ALJ to redetermine Aragon's credibility.

### C.  Medical-Vocational Guidelines (the grids)

The grids represent the Secretary's administrative notice of the jobs that exist in the national economy at the various functional levels (i.e. sedentary, light, medium, heavy, and very heavy).  *See Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir. 1984).  If the ALJ's findings of fact regarding a particular individual's age, education, training, and RFC all coincide with the criteria of a particular rule on these grids, the Secretary may conclude that jobs suitable for the claimant exist in the national economy and that the claimant therefore is not disabled.  *Id.*

Because the grids classify RFC based only on exertional or physical strength limitations, they may not be fully applicable to claimants with nonexertional impairments.  See 20 C.F.R. 404.1567; *Channel,* 747 F.2d at 580-81.  Nonexertional impairments are medically determinable impairments, including pain, that do not directly limit physical exertion, but may reduce an individual's ability to perform gainful work nonetheless.  *Id.* at 580.

If nonexertional impairments narrow the range of possible work the claimant can perform, the Secretary may only use the grids as a "framework" for determining whether, in light of all claimant's impairments, she has meaningful employment opportunity within the national economy.

20 C.F.R. pt. 404, subpt. P, App.2, 200 (e) (2).  In such cases, the Commissioner must also produce a vocational expert to testify whether specific jobs appropriate to claimant's limitations exist in the national economy.  *Id.*

Aragon contends the ALJ erred in conclusively applying the grids because of her "nonexertional as well as exertional pain."  Pl.'s Mem. in Supp. of Mot. to Reverse at 25.  The Court agrees.  On remand, the shall consult with a vocational expert to determine if Aragon's pain narrows the range of possible work she can perform.

### D.  Conclusion

Based on the record as a whole the Court finds that the ALJ's RFC determination and credibility determination are not supported by substantial evidence.  The Court further finds that the ALJ erred in conclusively relying on the grids.  On remand, the ALJ shall (1) redetermine Aragon's credibility; (2) obtain an RFC assessment from Dr. Tabet; (3) redetermine Aragon's RFC; and (4) consult with a vocational expert.  However, the Court expresses no opinion as to the extent of Aragon's impairments, or whether she is or is not disabled within the meaning of the Social Security Act.  The Court does not require any result.  This remand simply assures that the ALJ applies the correct legal standards in reaching a decision based on the facts of the case.

A judgment in accordance with this Memorandum Opinion and Order will be entered.

**DON J. SVET**
**UNITED STATES MAGISTRATE JUDGE**